1  DANIEL G. BOGDEN
   United States Attorney
2  KIMBERLY M. FRAYN
   ANDREW W. DUNCAN
3  Assistant United States Attorneys
   JONATHAN A. OPHARDT
4  Trial Attorney
   United States Department of Justice
5  Organized Crime and Gang Section
   Lloyd D. George Federal Courthouse
6  333 Las Vegas Boulevard South, Suite 5000
   Las Vegas, NV  89101
7  (702) 388-6336
   Attorneys for the United States
8

9
                       UNITED STATES DISTRICT COURT
10
                            DISTRICT OF NEVADA
11
   UNITED STATES OF AMERICA,          )
12                                     )   2:12-CR-0004-APG-(GWF)
                     Plaintiff,        )
13                                     )   **GOVERNMENT'S SENTENCING**
                                       )   **MEMORANDUM**
14            v.                       )
                                       )
15 MICHAEL LOFTON,                     )
                                       )
16                   Defendant.        )

17          Plaintiff United States of America, by and through DANIEL G. BOGDEN, United

18  States Attorney, Kimberly M. Frayn and Andrew W. Duncan, Assistant United States Attorneys, and

19  Jonathan A. Ophardt, Trial Attorney for the United States Department of Justice, Organized Crime

    and Gang Section, files this Sentencing Memorandum.
20
                             **PROCEDURAL HISTORY**
21
            On January 10, 2012, a federal grand jury indicted defendant Michael Lofton and
22
    thirty-eight other members of the Carder.su criminal organization, charging them with Participating
23
    in the Conduct of the Affairs of an Enterprise through a Pattern of Racketeering Activity, in
24
    violation of Title 18, United States Code, Section 1962(c) (Count One), Conspiring to Participate in
25
    the Conduct of the Affairs of an Enterprise through a Pattern of Racketeering Activity, in violation
26

of Section 1962(d) (Count Two), and violations of the identity theft and access device fraud statutes. PSR ¶ 1.  On February 5, 2013, defendant Lofton was arrested for violating his pretrial release by committing new financial fraud crimes while residing in the halfway house. PSR ¶ 4.  The defendant's release was revoked. Defendant Lofton was subsequently charged with Conspiracy to Commit Bank Fraud and Aggravated Identity Theft. (2:13-CR-0073-JCM-CWH, doc. no. 1).  On January 23, 2014, defendant Lofton pleaded guilty to Participating in the Conduct of the Affairs of an Enterprise through a Pattern of Racketeering Activity, in violation of Title 18, United States Code, Section 1962(c) (Count One in case number 2:12-0004).  PSR ¶ 2.  On that same date, the defendant pleaded guilty to a superseding information charging him with one count of Aggravated Identity Theft in case number 2:13-0073.  Sentencing in case number 2:13-0073 is presently set for May 28, 2014.

## **FACTS**

The Carder.su criminal enterprise is a sophisticated web of individuals, bound together by their criminal involvement in fraud and identity theft, who congregated at a central virtual location, the Carder.su website.  PSR ¶ 6.  The participants in the enterprise ranged from members who vended stolen data and counterfeit documents, to members who took part in the forums and purchased their illicit wares from other members, to moderators who maintained the peace between all members, and ensured the rules of the organization were followed.  PSR ¶ 6, 8, 9, 10.  An Administrator, codefendant Roman Zolotarev, acted as final arbiter, insurance provider (via escrow services), and protector of the marketplace from outside undesirables like law enforcement and "rippers."  PSR ¶ 12.

Homeland Security Investigations (HSI) Special Agent Michael Adams infiltrated the Carder.su criminal enterprise, and became a "reviewed vendor," that is, a seller of counterfeit identification documents ("IDs") who had passed the quality-control protocols established by the criminal enterprise.  PSR ¶ 14-16. Members of the Carder.su criminal enterprise needed counterfeit IDs to facilitate their "carding," that is, fraudulent purchasing with counterfeit credit cards.

Counterfeit IDs were also needed to send money to other vendors in the Carder.su enterprise using legitimate means, such as bank transfers, and to open bank accounts for use in bank fraud schemes known as "cash out services." On March 7, 2008, defendant Lofton became a member of the Carder.su Organization registering under the nics "Lofeazy" and "killit."  PSR ¶ 17.  From June 2008 through at least May 14, 2010, defendant Lofton purchased numerous counterfeit identification documents (drivers' licenses), as well as victims' personal and financial identifiers from other Carder.su members, which the defendant used to fraudulently obtain cash and high-end merchandise that he subsequently fenced. PSR ¶ 18-30.  These acts, among others, which defendant Lofton knowingly and voluntarily committed in furtherance of the Carder.su organization's criminal enterprise, constitute a pattern of racketeering activity, were committed in and affecting interstate and foreign commerce, and were done for the gain of the Carder.su's members and his own personal gain, the benefit of others, and in furtherance of the Carder.su criminal enterprise.    Financial institutions sustained more than $50.8 million dollars in actual loss as a result of the Carder.su criminal enterprise and defendant Lofton's crimes.

In his plea agreement, (doc. no. 592, p. 10-11), defendant Lofton has expressly admitted that:  1) a loss amount of more than seven million dollars ($7,000,000) but less than twenty million dollars ($20,000,000) is attributable to the defendant as a member of the enterprise;  2) the offense, Participation in a Racketeer Influenced Corrupt Organization, involved more than 250 victims;   3) a substantial part of the offense was conducted overseas and otherwise used sophisticated means; and  4) the offense involved possession and use of device-making equipment, and the production of and trafficking in unauthorized and counterfeit access devices. The defendant also specifically admitted that, directly or indirectly as a result of his criminal violations, he owes the joint-and-several restitution amount of $50,575,123.45. The defendant also agreed that property set forth in the Amended Bill of Particulars, and a criminal forfeiture money judgment of $50,575,123.45 are facilitating property and proceeds of his crimes and are therefore subject to forfeiture.

## SENTENCING GUIDELINE CALCULATION

Defendant Lofton's base offense level is 43.  PSR ¶ 46. After a 2-level role reduction, his offense level is 41. PSR ¶ 49.  Defendant Lofton's criminal history calculation results in a Criminal History Category I.  An offense level of 41 and a Criminal History Category I yield an advisory guideline range of 324-405.  The PSR does not recommend any reduction for acceptance of responsibility, PSR ¶ 52, but does allow for a 4-level group plea reduction, PSR ¶ 93. An offense level of 37 and a Criminal History Category I yield an advisory guideline range of 210-262. The Probation Office is recommending that the Court vary from that range and impose a sentence of 87 months. PSR ¶ 113.

## Loss Pursuant to U.S.S.G. § 2B1.1(b)(1)

The commentary to U.S.S.G. § 2B1.1 provides that, generally, "loss is the greater of actual loss or intended loss." *Id.* cmt. n. 3(A).  Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense," while intended loss means "the pecuniary harm that was intended to result from the offense." *Id.*   The commentary further defines "reasonably foreseeable pecuniary harm" as the "harm that the defendant knew or, under the circumstance, reasonably should have known, was a potential result of the offense."  *Id.* The commentary also distinguishes "gain" from "loss," forbidding the consideration of gain unless other methods of determining loss are ineffective.  *Id.* cmt. n. 3(B).  Sentencing courts are only required to make "reasonable estimate[s] of the loss" in a given case. *Id.* cmt n. 3(C).  When a case involves stolen or counterfeit access devices, a minimum loss amount of $500 per access device is used.  *Id.* cmt. n. 3(F). Alternatively, as mentioned above, the Court can rely upon estimated loss. *Id.* cmt n. 3(C). However, In this case, the United States has not sought to prove intended loss or relied on the minimum or estimated loss amounts, but rather focused its evidence on the actual loss suffered as a result of the activities of the Carder.su criminal enterprise by presenting reports of fraud activity from the four large credit card companies, Visa, MasterCard, Discover, and American Express. Trial Exs. 700-704.

Principles of relevant conduct govern the calculation of loss amount attributable to jointly undertaken criminal activity. *United States v. Treadwell*, 593 F.3d 990, 1002 (9th Cir. 2010) (citing U.S.S.G. § 1B1.3). Although loss must be reasonably foreseeable to a particular defendant to be attributable to him, the sentencing court need not proceed item by item in making its determination. *Id.* at 1002-03. A district court need only make factual determinations as to the scope of the defendant's joint undertaking, and the amount of losses reasonably foreseeable to that defendant. *Id.* at 1003. Reasonable foreseeability has been equated to simple "awareness" of the scope of the criminal activity of the criminal group. *Id*. at 1004.

Here, defendant Lofton and the government have agreed that a loss amount of more than seven million dollars ($7,000,000) but less than twenty million dollars ($20,000,000) is attributable to the defendant as a member of the enterprise. Lofton had substantial awareness of the scope of the criminal activity being conducted by the Carder.su criminal enterprise. He saw it written on the forums, every time he logged into the Carder.su webpage. Each and every time defendant Lofton posted in the forum he saw the number of times his fellow members had posted in a thread, the number of times his fellow members had viewed each thread, and the date and time of the last posting. He knew the Carder.su criminal enterprise was large. He also knew the vast scope of the criminal enterprise, and the extensive losses being inflicted by his fellow Carder.su member. Because of the open and collective nature of the Carder.su web forum, defendant Lofton had actual knowledge of the fraud conducted by a large number of his fellow enterprise members. Accordingly, the government believes that only a 20-level enhancement should be applied for a loss amount of more than seven million dollars ($7,000,000) but less than twenty million dollars ($20,000,000) when calculating defendant Lofton's guideline range.[1]

**Victim Enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)**

---

[1] The parties agreed in the plea agreement to ask that the Court work from a base offense level of 6, rather than the offense level 7, which is recommended in the PSR at paragraph 46. The parties also ask that the Court not impose the 2-level enhancement which Probation recommends because the offense involved receiving and selling stolen property and the defendant was in the business of receiving and selling stolen property. *Id.*

U.S.S.G. § 2B1.1(b)(2) requires a six-level enhancement of the offense level if the offense involved 250 or more victims. The commentary provides that, in cases involving means of identification, a victim is "any person who sustained any part of the actual loss" or "any individual whose means of identification was used unlawfully or without authority." *Id.* cmt. n. 1 & 4(E).  A means of identification includes an access device.  18 U.S.C. 1028(d)(7).  Here, the victims are the individual credit card account holders whose personal and financial information was trafficked, not simply the banks that sustained much of the actual loss.  Thus, as defendant Lofton himself agrees, the 6-level enhancement is appropriate.

**Outside the United States or Sophisticated Means pursuant to U.S.S.G. § 2B1.1(b)(10)(B)&(C)**

U.S.S.G. § 2B1.1(b)(10)(B) requires a two-level enhancement if a "substantial part of [the] fraudulent scheme was committed from outside the United States."  The scheme need not "originate" from outside the United States.  *United States v. Singh*, 291 F.3d 756, 761 (11th Cir. 2002).  Further, a defendant need not take action from outside the United States.  *Id.* at 761-62. Here, the upper-management of the Carder.su criminal enterprise resided in Russia and other former Soviet states.  Codefendant Roman Seleznev, the largest vendor of credit card numbers in the criminal organization, resided in Russia with servers in Russia.  Further, vendors operated from countries like China, Lebanon, Morocco, Egypt, and Pakistan. Numerous packages of counterfeit plastics from overseas vendors were shipped into the United States throughout the course of the criminal enterprises, some of which were seized at the border. A substantial portion of this criminal enterprise operated outside the United States, and the enhancement is therefore applicable.

In the alternative, U.S.S.G. § 2B1.1(b)(10)(C) requires a two-level enhancement if the fraudulent scheme "otherwise involved sophisticated means."  To qualify, a scheme must be "especially complex or especially intricate" compared to the usual fraud offense.  *Id.* cmt. n. 8(B). The Ninth Circuit has found that the use of accomplices to lie on a defendant's behalf, the use of several bank accounts, and the fabrication of numerous documents was sufficient to uphold application of the sophisticated means enhancement because the defendant had done more than "lie

to obtain a loan." *United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013).  Here, the complexity of the criminal enterprise, including the depth and breadth of their financial crimes and their focus on anonymity, all supports a sophisticated means enhancement. Moreover, defendant Lofton and the government have agreed that the 2-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(B)&(C) should apply.

**Acceptance of Responsibility Reduction**

The government agrees with Probation that under the terms of the parties' plea agreement, doc.no. 592, p. 12-13, all three points for acceptance of responsibility could be withheld based on the defendant's violation of his pretrial release conditions and his new law violations. However, the parties agreed to recommend that all three points be applied in this instance.  The defendant has pleaded guilty to one count of Aggravated Identity Theft in connection with case number 2:13-0073, which carries a mandatory twenty-four month consecutive custodial term. Part of the consideration given to the defendant to encourage that guilty plea was the government's agreement to not withhold the acceptance of responsibility reduction in this case.  Accordingly we ask that the Court reduce the defendant's guideline calculation by 3-levels.

**Group Plea Reduction**

Initially, the sentencing recommendation in the parties' plea agreement contemplated a 5-level group plea reduction, doc.no. 592, p. 13 and 15.  However, codefendant David Camez put the government to its burden at trial in November 2013.  Although Camez was found guilty at trial, the total possible group plea reduction reduced to 4-levels so long as eight other codefendants, along with defendant Lofton, pleaded guilty prior to this sentencing hearing   Doc. No. 592, p. 13.  The government asserts that approximately ten codefendants have pleaded guilty at this time. Accordingly, the government joins Probation's 4-level group plea recommendation.

**Government's Calculation of the Guidelines in Accordance with the Plea Agreement**

The government submits that the Court should find that the adjusted offense level 43 as calculated in the PSR at paragraph 46 is properly calculated based on the evidence proven beyond

a reasonable doubt against the Carder.su membership during the Camez trial. However, the government believes that defendant Lofton's sentence should be reduced by a downward variance based on the factors outlined in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for adequate deterrence of criminal conduct; the need to protect the public from further crimes of the defendant; and the sentencing range established by the Guidelines. The government believes that an offense level of 27, as set out in the plea agreement, may more closely mirror the defendant's criminal culpability, based on all the facts and circumstances unique to defendant Lofton:

<u>Offense Level Calculations.</u>

1.  Count 1: Participation in a Racketeer Influenced Corrupt
    Organization, in violation of 18 U.S.C. § 1962(c)
    Base Offense Level USSG § 2B1.1(a)(2):                              6

2.  Enhancements:

    Upward Adjustment:
    Total amount of loss of more
    than $7,000,000, but less than $20,000,000/
    U.S.S.G § 2B1.1(b)(1)(K):                                          +20

    Offense involves more than 250 victims/
    U.S.S.G. § 2B1.1(b)(2)(B):                                          +6

    Offense involved receiving stolen property and
    the person was in the business of receiving
    and selling stolen property/U.S.S.G.§ 2B1.1(b)(4):                  +0

    A substantial part of the offense was conducted
    overseas and otherwise used sophisticated means/
    U.S.S.G. § 2B1.1(b)(10):                                            +2

    Offense involved possession and use of device-
    making equipment, and the production of
    and trafficking in unauthorized and counterfeit
    access devices/
    U.S.S.G. § 2B1.1(b)(1)(11)(A)(B):                                   +2

Role Enhancement/
U.S.S.G. § 3B1.1(a):                                       -2

Acceptance of Responsibility                               -3

Group Plea Reduction                                       -4

Adjusted Offense Level:                            =    27

*See,* Doc. No. 592.

A Criminal History Category I at an offense level of 27, results in a range of 70 -87 months. The government has agreed to recommend a sentence near the low end of the guideline range of 70 months. [2]

**SENTENCING ARGUMENT**

As discussed above in the factual recitation, the Carder.su criminal enterprise exhibited substantial complexity, and the interdependence of its members' criminal schemes, makes the existence of this criminal enterprise particularly serious. *See United States v. Feola*, 420 U.S. 671, 693 (1975) (noting the law of conspiracy protects society "from the dangers of concerted criminal activity."). Congress recognized the seriousness of concerted criminal activity by passing the RICO act, authorizing a twenty year sentence for participation in a RICO enterprise, and a separate twenty year sentence for conspiring to participate in a RICO enterprise. 18 U.S.C. 1962(c) & (d). In addition, the Sentencing Commission has recognized the seriousness of sophisticated fraudulent schemes; the advisory guideline calculation in this case calls for a sentence between 210 and 240 months (20 years). PSR at p. 27.

Probation recommends, based on the unique facts and circumstances relating to defendant Lofton, that the Court vary down to a sentence of 87 months. PSR at p. 25-26. However, the government argues that those same facts and circumstances support an even greater variance down to a 70 months sentence. [3] The government also submits that the Court should order that the defendant pay restitution in the amount of $50, 575,123.45, jointly and severally with his

---

[2] Again, the recommendation would have been 63 months, as noted in doc. no. 592 p. 13, 15, if the defendant had been eligible for a full 5-level group plea reduction.
[3] This sentence recommendation takes into account that a mandatory 24 months consecutive term will likely be imposed in case number 2:13-0073 on May 28, 2014.

9

codefendants in this case and those charged in related cases 2:12-0083, 2:12-0084 and 2:13-120. The defendant must pay $100 in special assessment. The government asks that no fine be imposed given the amount of restitution owed.  The government also asks that all of the property set forth in the Amended Bill of Particulars be forfeited and that a criminal forfeiture money judgment of $50,575,123.45 be entered against the defendant.

Respectfully Submitted,

DANIEL G. BOGDEN,
United States Attorney


DATE: May 19, 2014____         /s / Kimberly M. Frayn_____
                               KIMBERLY M. FRAYN
                               ANDREW W. DUNCAN
                               Assistant United States Attorneys
                               JONATHAN A. OPHARDT
                               Trial Attorney
                               Department of Justice
                               Organized Crime and Gang Section

1

**Certificate of Service**

2

The undersigned counsel hereby certified that she served a copy of this document on defense

3

counsel, via electronic service through the PACER system on May 19, 2014.

4

DATE: <u>May 19, 2014___</u>                    <u>/s / Kimberly M. Frayn_____</u>

5                                             KIMBERLY M. FRAYN
                                              Assistant United States Attorney

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26